318 So.2d 843 (1975)
CITY OF JACKSON and City of Pearl
v.
PETITIONERS FOR INCORPORATION OF the CITY OF RICHLAND.
No. 48644.
Supreme Court of Mississippi.
September 29, 1975.
*844 Bacon & Smith, Arthur F. Jernigan, Jr., Watkins & Eager, George R. Fair, John E. Stone, Jackson, O.B. Triplett, Jr., Forest, for appellants.
McLaurin & Nicols, Brandon, for appellee.
Before RODGERS, SUBB and BROOM, JJ.
BROOM, Justice.
Incorporation of the City of Richland as a new municipality was decreed by the Rankin County Chancery Court on October 31, 1974. The cities of Pearl and Jackson (appellants) seek to reverse this decision.
The chief issues are:
1. Did the lower court err in decreeing the incorporation of Richland without requiring the inclusion therein of the entire area of Richland Sewer and Water District?
2. Was the evidence sufficient to establish that the public convenience and necessity required incorporation?
3. Was the proposed incorporation of Richland reasonable?
Over two-thirds of the qualified electors of an area of Rankin County signed the petition to incorporate Richland. No resident or landowner protested. The subject area is approximately 6,000 acres, having a total population of 3,262 people. Beginning *845 with the southern boundaries of the City of Pearl at the intersection of Highways I-20 and U.S. 49, the area of Richland extends south on both sides of U.S. 49 for nearly six miles. Situated within the area are the communities of Richland and Plain, and part, but not all, of the existing Richland Sewer and Water District (which district favored the petition).
Testimony established that land values within the area varied from about $25,000 per acre to a minimum of about $2,000 per acre, depending upon tract sizes and other factors. About eighty businesses and twenty-nine industries (some being rather large) were shown to exist within the area. The area is experiencing tremendous growth and its projected population within fifteen years was said to be 10,000.

I.
Appellants argue that all of the existing Richland Sewer and Water District must be included in the subject area. They base their contention on Chapter 281, section 6 [1968] General Laws of Mississippi, 363-64, which provides that "none of the territory" of Richland Sewer and Water District shall be subject to "annexation" by a city "unless all of the territory of such district be so annexed... ."
We find no merit in this contention of the appellants. The 1968 law relied upon clearly deals with annexation only, and has no express application to instances of incorporation. Hamilton v. Incorporation of Petal, 291 So.2d 190 (Miss. 1974). In Hamilton the appellants, contesting the incorporation of Petal, suggested that the existence of the East Forest Utility District (authorized by local and private legislation with language almost identical to that in the case at bar) required that the proposed municipality conform to its (the Utility District's) already established boundaries and, in effect, deprived the chancellor of his discretion to modify or decrease the size of the proposed area of incorporation. This Court noted the fundamental difference in the terms "annexation" and "incorporation."

II.
Next the appellants contend that the chancellor erred in finding that the public convenience and necessity required incorporation of Richland. They say that there was no affirmative proof offered by the appellees to establish public convenience and necessity.
The criterion for determining public necessity, as stated in Hamilton, supra, is a substantial or obvious need disclosed by relevant circumstances. In Hamilton some of the relevant circumstances referred to were: a dramatic increase in population over the past ten years; the presence of a large school facility; the presence of churches and civic clubs; and 150 or more small businesses and manufacturing plants. The court, taking these circumstances into account, said:
The presently disclosed relevant circumstances, some of which were mentioned above, are more than sufficient to establish public necessity for incorporation, particularly when thought is directed to the present need for police and fire protection, public health and education, in a burgeoning area of our society. (291 So.2d at 192).
Applied to the facts revealed in the record of the case at bar, it would appear that this Court would not be justified in holding that the chancellor was manifestly wrong in determining that the public convenience and necessity required the incorporation of Richland.
Appellants further contend that appellees introduced no "affirmative evidence" of public convenience and necessity. Proof in the record shows that the area was in need of street maintenance and lights, building codes, zoning ordinances, drainage, sewer service, garbage disposal, and police and *846 fire protection. Mr. Townsend, an investigative and enforcement officer for the Mississippi State Board of Health, testified that there was a critical need for sanitary facilities. He further testified that funds for such facilities would be much more readily available to an incorporated municipality. This expert witness (appellees') testified that an incorporated municipality would have first priority for funds and that the existing water and sewer district had been trying unsuccessfully to get financing for their project since 1968. Mr. Clyde Cook, another expert, testified for the appellees that the future growth and development of the area, unregulated by municipal zoning, was a potentially serious problem.
Although appellants' testimony tended to negate the need to incorporate for public convenience and necessity, testimony adduced by the appellees was sufficient to permit the chancellor to find that it was required. Appellants' brief attaches undue significance to the failure of appellees' witnesses to use the phrase "public convenience and necessity." The fact that none of the witnesses for appellees expressly used those words does not preclude the chancellor's finding that the statutory requirement of public convenience and necessity had been satisfied.

III.
Appellants also argue that the chancellor erred in finding that the incorporation of Richland was reasonable. They assert that: No recognizable community exists; the size of the area of proposed incorporation is disproportionate to the population; the incorporation would be a deterrent to industrial development; and incorporation would have a detrimental effect on the neighboring municipalities.
Appellees' witness, Clyde Cook, Professor of Urban and Regional Planning at the University of Mississippi, testified that the area, in general, contained a well-balanced community. Dr. Spell, a petitioner (and mayor designate) residing in the area, testified that several community meetings had been held in the course of considering the incorporation. The very existence of the petition with the required number of signatures indicates a certain amount of community awareness. School and church facilities are situated within the area. Based on these factors, we hold that the chancellor was justified in finding that there was in fact a community in existence.
Although the area of proposed incorporation is somewhat large for the number of residents, there was expert testimony to the effect that vacant land within the corporate boundaries was necessary for the future development of the area, and that the incorporation was reasonable. Mr. Cook stated that although he was not involved in the planning of the boundaries, they conform to the practices of good municipal planning and are the same as he himself would have chosen. The boundaries were decided upon by residents of the area at community meetings. In general, there seems to be a well-balanced pattern of land use in the area and incorporation would insure that there would be municipal control over the development of the remaining vacant property to the benefit of the community. The chancellor was justified in finding that the boundaries of the area to be incorporated were reasonable.
Expert testimony presented by appellees indicated that, given effective land use planning, the northern part of the proposed city would continue to develop industrially. Industrial development is a factor to be considered along with other factors in determining the reasonableness of incorporation, and the chancellor was not manifestly wrong in finding that it would not be hindered thereby.
Summarized, the totality of testimony indicated that the incorporation of *847 Richland might restrict or hinder the expansion of either Jackson or Pearl where the boundaries of Richland were contiguous to the municipal boundaries of those cities. Although the effect of incorporation on neighboring communities is a factor to be considered in determining the reasonableness of incorporation, it is secondary to the welfare of the residents of the area to be incorporated. City of Meridian v. Town of Marion, 255 So.2d 906, 907 (Miss. 1971). The chancellor was justified in determining that the benefit to be derived by the immediate incorporation of Richland outweighed the conjectural detriment to its neighboring communities.
It is noteworthy that neither Jackson nor Pearl has made any effort to annex the area in question, or furnish it with municipal services. Furthermore, Mississippi Code Annotated section 61-9-5 (1972) makes it impossible for Jackson to annex the area without the consent and approval of the Rankin County Board of Supervisors which has by resolution expressed its opposition to expansion of Jackson into the subject area. Absent any indication that the Board will change its attitude on the subject, this large and developing community shall not be deprived of its right to incorporate and be left in a status of limbo until some unforeseen time when Jackson or Pearl might annex it. To hold that the chancellor erred in decreeing the incorporation would deny the people of Richland a "reasonable opportunity of being able to solve the community problems in the foreseeable future." In Re City of Pearl, 279 So.2d 590 (1973).
Although there was contradictory testimony regarding almost every aspect of the proposed incorporation, the chancellor resolved the contradictions in favor of the petitioners. His findings are supported by competent testimony and we cannot logically conclude that he was manifestly wrong in his determination. His decision was clearly within the rationale of our earlier decisions in the cases of Pearl, Petal and Marion, supra.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, ROBERTSON and WALKER, JJ., concur.